**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| OVERTON & SONS TOOL & DIE CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01302-TWP-DKL |
| | ) | |
| PRECISION TOOL, DIE & MACHINE CO., | ) | |
| INC., doing business as NTH WORKS, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON MOTION TO DISMISS, TRANSFER, OR STAY

This matter comes before the Court on Precision Tool, Die & Machine Co., Inc.'s

("Precision") Motion to Dismiss, or in the Alternative, Motion to Transfer, or in the Alternative,

Motion to Stay (Dkt. 7). Overton & Sons Tool & Die Co., Inc. ("Overton") brought suit against

Precision, alleging that Precision breached two separate agreements between the parties. For the

reasons set forth below, Precision's Motion is **DENIED**.

## I. BACKGROUND

For the purposes of a motion to dismiss, the Court must accept the complaint's well-

pleaded allegations as true and draw all favorable inferences for the plaintiff. *Killingsworth v.*

*HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). In January 2013, Precision

solicited quotes for an order of dies to be used in the construction of cable abutments. After

multiple communications and a series of evolving quotes, Precision accepted Overton's final

quote in February 2013. Overton acknowledged Precision's purchase order in an email Order

Acknowledgement. At that time, Overton promised delivery by April 30, 2013. From February

to mid-March, Precision made additional changes to the project specifications.

Each quote provided by Overton (and the Order Acknowledgment) stated that Overton had the right to "adjust price and delivery if any changes or additions to the project specifications" were requested by Precision. On March 11, 2013, Overton informed Precision that it would be impossible to meet the original deadline of April 30th due to Precision's changes. Shortly thereafter, Precision informed Overton that it was terminating the contract. As of the date of the purported termination, Precision had paid Overton $17,490.90 of the original contract price. After the termination of the first agreement, Precision entered into a second agreement with Overton, agreeing to pay Overton $10,000.00 for design drawings. However, despite delivering the requested drawings, Overton has not been paid under the terms of this subsequent agreement.

On August 16, 2013, Overton filed a complaint in this Court, requesting $167,418.00 in damages arising from Precision's alleged breach of the two agreements. This amount included the balance of the full contract price, which Overton characterizes as "lost revenues and profits" under the original contract terms, and $10,000.00 for the drawings delivered to Precision. On September 4, 2013, Precision filed their lawsuit in the Western District of Kentucky. Two days later, Precision filed the instant Motion to Dismiss, or in the Alternative, Motion to Transfer, or in the Alternative, Motion to Stay. Additional facts will be addressed below as necessary.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the party asserting jurisdiction. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). In determining whether subject matter jurisdiction exists, the court must accept all well-pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Id.* A court ruling on a motion

to dismiss under Rule 12(b)(1) also "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). Because "[j]urisdiction is the 'power to declare law,'" a district court may not proceed in its absence. *Hay v. Ind. State Bd. of Tax Com'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (citing *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)).

### III. DISCUSSION

#### A. Motion to Dismiss

This motion to dismiss under Rule 12(b)(1) challenges whether the amount in controversy meets the requirement of 28 U.S.C. § 1332(a). Under 28 U.S.C. § 1332, district courts maintain original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). However, in order for this Court to exercise jurisdiction over diverse parties, the plaintiff must plead sufficient facts to satisfy the amount in controversy component. To survive a motion to dismiss for lack of subject matter jurisdiction, a plaintiff need only show the existence of facts that could, consistent with the complaint's allegations, establish jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495 (7th Cir. 2005)).

A party challenging the amount in controversy may make either a facial or factual challenge to jurisdiction. Facial challenges to jurisdiction require only that the Court look to the complaint to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, whereas a factual challenge occurs where the complaint is formally sufficient, but the contention

3

is that there is in fact no subject matter jurisdiction. *Id.* at 443-444. In the context of a facial

challenge, the Court does not look beyond the allegations of the complaint, which are taken as

true for purposes of the motion. *Id.* at 444. A facial challenge to jurisdiction succeeds "[o]nly if

it is legally certain that the recovery (from plaintiff's perspective) or cost of complying with the

judgment (from defendant's) will be less than the jurisdictional floor. . . ." *LM Ins. Corp. v.*

*Spaulding Enters. Inc.*, 533 F.3d 542, 547 (7th Cir. 2008) (quoting *Meridian Sec. Ins. Co. v.*

*Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)). However, where the defendant launches a factual

challenge to jurisdiction, the Court may properly look beyond the jurisdictional allegations of the

Complaint and view whatever evidence has been submitted on the issue to determine whether

jurisdiction in fact exists. *Id.* "[I]f the facts place the district court on notice that the

jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth."

*Apex Digital, Inc.*, 574 F.3d at 444 (quoting *Kanzelberger v. Kanzelberger*, 782 F2d 774, 777

(7th Cir. 1986)).

Precision argues that it is making a facial challenge to jurisdiction, arguing that the facts

alleged in Overton's Complaint do not support a recovery of an amount in excess of $75,000.00.

However, Precision also attaches exhibits to its motion in support of an argument that the true

amount in controversy between Overton and Precision does not meet the jurisdictional threshold,

which constitutes a factual challenge to jurisdiction. Regardless of whether the Court treats

Precision's motion as a facial or factual challenge, the Court finds that Overton's Complaint

passes the "legal certainty" test.

### 1. Facial Jurisdictional Challenge

Overton's Complaint contains an *ad damnum* clause alleging that the amount in

controversy is $167,418.00. When a complaint contains an *ad damnum* clause, "it controls

unless recovering that amount would be legally impossible." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)). Precision argues that, based upon the facts alleged in Overton's Complaint, recovery of that amount is legally impossible because it includes recovery of the full price of the contract.

The Court agrees that recovery of the amount stated in the *ad damnum* clause would be legally impossible based upon the facts alleged in Overton's Complaint. Because the original contract between Precision and Overton was primarily for the sale of goods, the Uniform Commercial Code would apply. *See Insul-Mark Midwest, Inc. v. Modern Materials*, *Inc.*, 612 N.E.2d 550, 554-55 (Ind. 1993) (where the "predominant thrust" of the transaction is for the manufacture and delivery of goods, the Uniform Commercial Code applies). Under the Indiana Uniform Commercial Code, Ind. Code § 26-1-2-101 et seq. ("UCC"),[1] where the buyer repudiates with respect to a part or the whole of the contract, which Overton alleges here, the aggrieved seller may elect to recover, *inter alia*, damages for nonacceptance of the goods under Indiana Code § 26-1-2-708 ("UCC § 708"), or "in a proper case the price" under Indiana Code § 26-1-2-709 ("UCC § 709"). I.C. § 26-1-2-703(e). UCC § 709 permits recovery of the contract price only where the goods are accepted or where conforming goods are lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer, and, for goods identified to the contract, the seller is unable after reasonable effort to resell them at a reasonable price, or circumstances indicate that such effort will be unavailing. I.C. § 26-1-2-709(1)(a)-(b).

Overton's Complaint alleges that Precision repudiated the contract on March 13, 2013; two days after Overton informed Precision that it would be unable to meet the April 30th deadline

---

[1] The Court assumes, without deciding, that Indiana statutory law is applicable in this case, and the parties do not argue this issue. However, as pointed out by Precision, Indiana UCC and Kentucky UCC provisions are nearly identical, and would not change the outcome of the Court's ruling on this motion.

because it had not received final approval on the revised design details and specifications. Dkt. 1 at 4-5. It does not appear from these facts, nor does Overton argue otherwise, that Overton delivered any finished goods to Precision or that the entire order was even produced such that either UCC § 709(1)(a) or (b) would apply. Therefore, on the face of the Complaint, it appears that recovery of the full contract price would be legally impossible.

However, the jurisdiction inquiry cannot end here. The Court also agrees with Precision that the legal impossibility of recovery of the full contract price does not necessarily mean that Overton could not, as a matter of law, recover an amount in excess of $75,000.00. Under UCC § 708, the seller may recover the greater of (1) the difference between the market price at the time and place for tender and the unpaid contract price, together with any incidental damages provided in I.C. § 26-1-2-710, less expenses saved in consequence of the buyer's breach; and (2) the profit which the seller would have made from full performance by the buyer, together with any incidental damages provided in I.C. § 26-1-2-710. I.C. § 26-1-2-708. Thus, Overton could conceivably recover the profit it would have realized had the parties fully performed the contract which, with a $175,000.00 contract price, could conceivably exceed $75,000.00. *See Meridian Sec. Ins. Co.*, 441 F.3d at 541 ("Whether damages will exceed $75,000 is not a fact but a prediction, and with respect to that subject the court must decide whether to a legal certainty . . . the claim is really for less than the jurisdictional amount.") (internal quotations omitted). Therefore, the Court concludes that it is not legally impossible for Overton to satisfy the threshold jurisdictional amount in controversy based upon the face of the Complaint.

### 2. Factual Jurisdictional Challenge

Precision also makes a factual challenge to jurisdiction by attaching evidence to its motion that it alleges shows the amount in controversy is actually less than $75,000.00. Because

it is legally impossible for Overton to recover the balance of the contract price, the Court must look beyond the number in the *ad damnum* clause to determine whether the facts support an amount in controversy above the jurisdictional threshold. *See Rising-Moore*, 435 F.3d at 815 ("When the complaint includes a number, it controls unless recovering that amount would be legally impossible."). Precision offers evidence of the parties' settlement correspondence in an attempt to show Overton's amount in controversy does not meet the jurisdictional minimum. While offers to settle are not admissible to prove liability, they are admissible in determining whether an amount in controversy creates subject matter jurisdiction. *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 n.2 (7th Cir. 2011) ("Even though settlement offers are inadmissible to prove liability . . . they are admissible to show that the amount in controversy for jurisdictional purposes has been met.").

Precision argues that Overton's $10,000.00 demand contained in its June 8, 2013, letter is evidence that Overton perceived its damages to be $10,000.00, not $167,418.00. However, this letter clearly states that the $10,000.00 demand was pursuant to the March 14, 2013 purchase order for further design work on the dies by Overton. Overton asserts that the design work was completed and forwarded to Precision, but Precision failed to pay Overton under the terms of the purchase order. Dkt. 7-10 at 4. The letter also states that Overton would "aggressively defend any such claim" made by Precision with respect to the original contract, and would "file its counterclaim for the *significant damages* it incurred if any such litigation is instituted by [Precision]." *Id.* (emphasis added). Overton made no factual concessions that its damages were only limited to the $10,000.00 it claims it is owed under the second purchase order for completed and delivered design work. Thus, the Court concludes that it is not factually impossible for

Overton to satisfy the amount in controversy requirement of § 1332 based upon the evidence submitted by Precision, thus Precision's factual challenge of the Court's jurisdiction fails as well.

Because the Court finds that the factual allegations in the Complaint, as well as the evidence submitted by Precision, do not support Precision's argument that Overton's claim is for less than the jurisdictional amount "to a legal certainty," Precision's motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

## B.      Motion to Transfer

In the alternative, Precision argues that this case should be transferred to the Western District of Kentucky. Three weeks after Overton filed its suit in this Court, Precision filed its own claim against Overton, arising out of the same transaction, in Kentucky. Precision does not argue that venue is improper in the Southern District of Indiana; rather, it argues that Overton filed its suit in this district in a "race to the courthouse" to secure a perceived tactical advantage, and that venue properly rests in the United States District Court for the Western District of Kentucky.

Precision essentially argues that transfer should be granted under 28 U.S.C. § 1404(a). Section 1404 provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) gives the district court discretion to 'adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (additional citations omitted). It is well established that there is a strong presumption in favor of the plaintiff's choice of forum. *Miller Pipeline Corp. v. British Gas plc*, 901 F. Supp. 1416,

1425 (S.D. Ind. 1995). However, this presumption is rebuttable, and the burden is on the party moving for transfer to establish, by reference to particular circumstances, that the transferee forum is "clearly more convenient than the transferor forum." *Id.* (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986)).

Precision does not argue the case should be transferred for the convenience of the parties or witnesses, and the Court agrees that either venue would impose an equal hardship—though not unduly so—on the other party. Rather, Precision argues that this case should be transferred based upon Overton's alleged bad faith attempt at forum shopping. However, this is not one of factors the Court looks to in deciding whether transfer is in the interest of justice. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The factors considered in this analysis include "docket congestion and likely speed to trial in the transferor and potential transferee forums, . . . each court's relative familiarity with the relevant law, . . . the respective desirability of resolving controversies in each locale, . . . and the relationship of each community to the controversy." *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964); *Chi., Rock Island & Pacific R.R. Co. v. Igoe*, 220 F.2d 299, 303 (7th Cir. 1955); *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 200 F. Supp. 2d 941, 946 (N.D. Ill. 2002)).

Precision does not address any of these factors, but rather argues that this Court should disregard the "first to file" rule because it is the "natural plaintiff" in this case, and because Overton filed an "anticipatory suit" after Precision threatened to file its own breach of contract claim. The cases cited by Precision in support of its argument that the Court should not follow the "first to file" rule where the case is an anticipatory suit involve declaratory judgment actions

filed as a preemptive strike against a party that is expected to seek coercive relief. *See Tempco Elec. Heater Corp. v. Omega Eng'g*, 819 F.2d 746, 749 (7th Cir. 1987) ("Where . . . the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later."); *Research Automation, Inc.*, 626 F.3d at 980 ("[W]here the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief—we ordinarily give priority to the coercive action, regardless of which case was filed first."). "While courts in the Seventh Circuit are disinclined to apply the first-filed rule in cases of anticipatory lawsuits, those suits often involve the first-filed plaintiff seeking a declaratory judgment." *Hoosier Energy Rural Elec. Co-op., Inc. v. Exelon Generation Co., LLC*, No. 1:04-CV-1761-JDT-TAB, 2005 WL 4882703, at *3 (S.D. Ind. Sept. 26, 2005) (citing cases).

The Court finds that Overton has not filed an anticipatory suit of the nature that warrants disregarding the first-to-file rule, nor is there any support for Precision's argument that the case should be transferred because it is the "natural plaintiff" under these circumstances. Both parties filed a coercive action based upon a dispute over who actually breached the contract at issue. Overton claims that Precision breached the contract by repudiating an agreement which provided that delivery dates could be adjusted, while Precision claims Overton breached the contract in stating that it would be unable to deliver the dies by the April 30th deadline. Because Precision has provided no other compelling reason to transfer this case to the Western District of Kentucky, the Court will not disturb Overton's choice of forum. Precision's motion to transfer is therefore **DENIED**.

## C.     Motion to Stay

Precision does not provide any argument or authority as to why this case should be stayed. The Court finds this argument to be waived and, therefore, **DENIES** Precision's motion to stay.

## IV.     CONCLUSION

For the reasons set forth above, Precision's Motion to Dismiss, or in the Alternative Motion to Transfer, or in the Alternative Motion to Stay (Dkt. 7) is **DENIED**.


**SO ORDERED.**


Date: _04/28/2014_____

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana


DISTRIBUTION:

Scott R. Leisz
BINGHAM GREENEBAUM DOLL LLP
sleisz@bgdlegal.com

Carl A. Hayes
BINGHAM MCHALE LLP
chayes@bgdlegal.com

Charity B. Neukomm
SEILLER WATERMAN LLC
neukomm@derbycitylaw.com

Paul J. Hershberg
SEILLER WATERMAN LLC
hershberg@derbycitylaw.com